# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
## No. 21-1963V

|  |  |
|---|---|
| MEGAN SHIPMAN,<br><br>                Petitioner,<br><br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                Respondent. | Chief Special Master Corcoran<br><br>Filed: June 4, 2026 |

*Robert H. Pedroli, Jr., Pedroli & Gauthier, LLC, Clayton, MO, for Petitioner.*

*Voris Edward Johnson, U.S. Department of Justice, Washington, DC, for Respondent.*

### DECISION ON ATTORNEY'S FEES AND COSTS[1]

On October 5, 2021, Megan Shipman filed a petition for compensation under the National Vaccine Injury Compensation Program ("the Program"), 42 U.S.C. §300aa-10, *et seq.*,[2] (the "Vaccine Act"). Petitioner alleged that she suffered Guillain-Barré syndrome ("GBS") as a result of an influenza ("flu") vaccine administered on October 8, 2018. Petition at 1. The matter was assigned to the "Special Processing Unit" (the "SPU"). ECF No. 15.

The case was dismissed, and Petitioner has now moved for a final award of fees. However, for the reasons set forth below, I find that Petitioner has failed to establish

---

[1] Because this Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755.  Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

reasonable basis in this claim. Thus, she is not entitled to an award of attorney's fees or costs.

## I.    Relevant Procedural History

After determining that the existing record showed Petitioner suffered from hypokalemia – an expressly-defined Table exclusionary factor - and that her symptoms onset occurred too late to support even a non-Table claim, I issued an order directing Petitioner to show cause why her claim should not be dismissed. ECF No. 32. In response, Petitioner moved for the voluntary dismissal of her claim pursuant to Vaccine Rule 21(a) (ECF No. 34), and I issued an order concluding proceedings two days later (ECF No. 35).

On November 11, 2024, Petitioner filed a request for attorney's fees and costs that listed only $7,155.59 in costs. ECF Nos. 38-39. Acknowledging that she must establish good faith and reasonable basis to warrant a fees award (ECF No. 39 at 1), Petitioner asks that I "order the attorney's fees and costs paid" (*id.* at 2).

Respondent has opposed any fees award in this matter, arguing that "a reasonable basis for the claim was never established." ECF No. 40 at 2. In addition to the deficiencies which formed the basis for dismissal, he insists Petitioner failed to provide "sufficient objective evidence that she . . . had GBS." *Id.* at 25. Respondent maintains that "[a] reasonably diligent investigation should have revealed the legal and factual deficiencies in petitioner's claim prior to filing." *Id.* at 26.

In an amended fees request, filed on November 25, 2024, Petitioner provided a fuller amount of attorney's fees and costs - $33,802.59. ECF No. 41-3 at 26; ECF No. 41-4 at 2-3. In an accompanying memorandum, she insists that "[w]hen the claim was filed, the evidence supported the diagnosis of GBS and that symptoms started within the 3 to 42 days after the vaccine was administered." ECF No. 42 at 10. To support this assertion, Petitioner cited specific entries in her affidavit and medical records, as well as a report from Raymond F. Cohan, D.O., the expert who opined in support of her workers' compensation claim. *Id.* at 2-9; *see* Ex. 8 (Dr. Cohan's letter).

On January 16, 2026, Petitioner filed another memorandum, reporting that her workers' compensation claim "has been resolved for a nominal amount." ECF No. 44 at 1. The accompanying documentation reveals the claim "[wa]s settled as a completely disputed claim" (*id.* at 10) on January 13, 2026, for a payment of $17,014.69 (*id.* at 5). After deductions of $4,253.67 for attorney's fees and $2,761.02 for actual costs, Petitioner received $10,000.00. *Id.* at 9-10. Petitioner's counsel added "this settlement should not affect the claims for costs and fees as very little costs were recovered and none of the

attorney's time spent on the Workers' Compensation claim were claimed in the pleading seeking fees and costs in this case. *Id.* at 1.

## II.    Applicable Legal Standards

Motivated by a desire to ensure that Vaccine Act petitioners have adequate assistance from counsel when pursuing their claims, Congress determined that attorney's fees and costs could be awarded even in unsuccessful claims. H.R. REP. NO. 99-908, at 22 *reprinted in* 1986 U.S.C.C.A.N. 6344, 6363; *see also Sebelius v. Cloer*, 133 S.Ct. 1886, 1895 (2013) (discussing this goal when determining that attorneys' fees and costs may be awarded even when the petition was untimely filed). This is consistent with the fact that "the Vaccine Program employs a liberal fee-shifting scheme." *Davis v. Sec'y of Health & Hum. Servs.*, 105 Fed. Cl. 627, 634 (2012). Indeed, it may be the only federal fee-shifting statute that permits *unsuccessful* litigants to recover fees and costs.

However, Congress did not intend that *every* losing petition be automatically entitled to attorney's fees. *Perreira v. Sec'y of Health & Hum. Servs.*, 33 F.3d 1375, 1377 (Fed. Cir. 1994). And there is also a prerequisite to even obtaining fees in an unsuccessful case. The special master or court may award attorney's fees and costs to an unsuccessful claimant only if "the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought." Section 15(e)(1). Reasonable basis is a prerequisite to a fee award for unsuccessful cases – but establishing it does not automatically *require* an award, as special masters are still empowered by the Act to deny or limit fees. *James-Cornelius on behalf of E. J. v. Sec'y of Health & Hum. Servs.*, 984 F.3d 1374, 1379 (Fed. Cir. 2021) ("even when these two requirements are satisfied, a special master retains discretion to grant or deny attorneys' fees").

As the Federal Circuit has explained, whether a discretionary fees award is appropriate involves two distinct inquiries, but only reasonable basis is at issue herein.[3] Reasonable basis is deemed "an objective test, satisfied through objective evidence." *Cottingham v. Sec'y of Health & Hum. Servs.*, 971 F.3d 1337, 1344 (Fed. Cir. 2020) ("Cottingham I"). "The reasonable basis requirement examines "not at the likelihood of success [of a claim] but more to the feasibility of the claim." *Turner*, 2007 WL 4410030, at *6 (quoting *Di Roma v. Sec'y of Health & Hum. Servs.,* No. 90-3277V, 1993 WL 496981, at *1 (Fed. Cl. Spec. Mstr. Nov. 18, 1993)). The Federal Circuit recently explained "that a

---

[3] Claimants must also establish that the petition was brought in good faith. *Simmons v. Sec'y of Health & Hum. Servs.*, 875 F.3d 632, 635 (Fed. Cir. 2017) (quoting *Chuisano v. Sec'y of Health & Hum. Servs.*, 116 Fed. Cl. 276, 289 (2014)). "[T]he 'good faith' requirement . . . focuses upon whether petitioner honestly believed he had a legitimate claim for compensation." *Turner v. Sec'y of Health & Hum. Servs.*, No. 99-0544V, 2007 WL 4410030, at *5 (Fed. Cl. Spec. Mstr. Nov. 30, 2007). But good faith is not disputed herein, and I do not ascertain evidence in the record calling it into question.

reasonable basis analysis is limited to objective evidence, and that subjective considerations, such as counsel's subjective views on the adequacy of a complaint, do not factor into a reasonable basis determination." *James-Cornelius*, 984 F.3d at 1379.

Although clearly easier to meet than the preponderant standard required for compensation, "courts have struggled with the nature and quantum of evidence necessary to establish a reasonable basis." *Wirtshafter v. Sec'y of Health & Hum. Servs.,* 155 Fed. Cl. 665, 671 (Fed. Cl. 2021). "[I]t is generally accepted that 'a petitioner must furnish some evidence in support of the claim.'" *Id.* Citing the *prima facie* elements of a successful claim described in Section 11(c)(1), the Federal Circuit recently instructed that the level of the objective evidence sufficient for a special master to find reasonable basis should be "more than a mere scintilla but less than a preponderance of proof." *Cottingham I*, 971 F.3d at 1345-46. "This formulation does not appear to define reasonable basis so much as set its outer bounds." *Cottingham v. Sec'y of Health & Hum. Servs.,* 159 Fed. Cl. 328, 333, (Fed. Cl. 2022) (*"Cottingham II"*), *aff'd without op.*, 2023 WL 754047 (Fed. Cir. Nov. 14, 2023). "[T]he Federal Circuit's statement that a special master 'could' find reasonable basis based upon more than a mere scintilla does not mandate such a finding." *Cottingham II*, 159 Fed. Cl. at 333 (citing *Cottingham I*, 971 F.3d at 1346).

Furthermore, the issue of reasonable basis is not a static inquiry. Reasonable basis for a claim at the time of filing may cease to exist as further evidence is presented. *Perreira*, 33 F.3d at 1377. In *Perreira,* the Federal Circuit affirmed a special master's determination that reasonable basis was lost after Petitioner's "expert opinion, which formed the basis of the claim, was found to be unsupported by either medical literature or studies." *Id.* at 1376.

Symptom onset for a GBS Table injury must occur three to 42-days post-vaccination. 42 C.F.R. § 100.3(a)XIV(D) (2017). For a non-Table injury, "a showing of a proximate temporal relationship between vaccination and injury" is required to meet the third *Althen* prong. *Althen v. Sec'y of Health & Hum. Servs.*, 418 F.3d 1274, 1278 (Fed. Cir. 2005) (setting forth the three-pronged test for causation). As I have previously noted, "other special masters have never gone beyond a two-month (meaning eight week) interval in holding that a vaccination caused a demyelinating illness." *Barone v. Sec'y of Health & Human Servs*., No. 11-707V, 2014 WL 6834557, at *13 (Fed. Cl. Spec. Mstr. Nov. 12, 2014) (citing *Aguayo v. Sec'y of Health & Human Servs*., No. 12–563V, 2013 WL 441013, at *3 (Fed. Cl. Spec. Mstr. Jan. 15, 2013); *Corder v. Sec'y of Health & Human Servs*., No. 08–228V, 2011 WL 2469736, at *27–*29 (Fed. Cl. Spec. Mstr. May 31, 2011) (proposed four-month onset period from vaccination to GBS too long; two months is longest reasonable timeframe)).

4

### III.    Analysis – Reasonable Basis

Petitioner first complained of symptoms typical of a GBS illness during a visit to the emergency room on April 5, 2019 - but almost *six months* post-vaccination. Ex. 5 at 8-97. "[P]resent[ng] with a complaint of lower extremity weakness which [sic] onset slowly over the past week" (*id.* at 16), she described the inability to get out of bed or use her legs and hands, plus tingling around mouth which began that morning. *Id.* at 16-17. Petitioner added that "she had a minor virus prior to the cholecystectomy" undergone a few days earlier,[4] which was accompanied by a low-grade fever. Ex. 5 at 17. Thus, this initial memorialized complaint describes a GBS onset occurring well beyond the 3 to 42 days required for a Table injury – and an injury more likely due to the reported illness that had occurred a few days prior.

Although Petitioner sometimes described an onset which aligned with the flu vaccine she received in October 2018, she consistently reported an increase in symptoms beginning no sooner than March 2019. Ex. 4 at 1510, 1516, 1542, 1525. Such a delayed symptom increase would be inconsistent with a GBS illness that began in the fall of 2018.[5] And multiple treating physicians opined Petitioner's clinical presentation was not typical of a GBS illness. *Id.* at 1516, 1605, 1631. None attributed her symptoms to the flu vaccine she received.

To support her vaccine claim, Petitioner submitted a letter from Dr. Cohan – the expert retained for her unsuccessful workers' compensation claim. Ex. 8. Although Dr. Cohan opined that Petitioner's GBS was secondary to the flu vaccine she received, his opinion is clearly based, in large part, upon Petitioner's self-reported assertion of tingling and weakness in her extremities approximately two weeks post-vaccination. *Id.* at 1-9. To establish the accuracy of this alleged onset, he cites an entry related to "numbness and tingling" found in primary care provider record from a February 9, 2019 well woman visit. *Id.* at 2; *see* Ex. 3 at 18-19. However, that record supports only a slightly closer-in-time onset and those symptoms were attributed to low B-12 levels. *Id.* at 18. Thus, Dr. Cohan's opinion warrants little evidentiary weight.[6]

---

[4] Petitioner underwent a laparoscopic cholecystectomy on April 3, 2019. Ex. 4 at 2369.

[5] To satisfy the Table definition for GBS, a petitioner must exhibit a monophasic illness pattern, an interval between onset and nadir of weakness between 12 hours and 28 days, and a subsequent clinical plateau. 42 U.S.C. § 100.3(c)(15)(ii) (additional Qualifications and Aids to Interpretation ("QAI")).

[6] The probative value of experts' opinions is diminished when based upon information which deviates from that contained in contemporaneously created medical records. *See,* e.g., *Walters v. Sec'y of Health & Hum. Servs.*, No. 15-1380V, 2023 WL 3750716, at *24-25 (Fed. Cl. Spec. Mstr. June 1, 2023), *aff'd,* 2023 WL 5274006 (Fed. Cl. July 31, 2023), *aff'd,* 2025 WL 1000404 (Fed. Cir. Apr. 3, 2025).

There is otherwise no evidence in this case to support Petitioner's assertion that her symptoms began in the fall of 2018. When viewed most favorably to Petitioner, the medical records allow for a GBS onset no sooner than February 2019 – more than *17 weeks or four months* after her October 8, 2018 vaccination and almost three times the six-week period set by the Table. Whether analyzed as a Table or causation-in-fact claim, since such a delayed post-vaccination onset is not (and has never been deemed) medically-acceptable. As I previously noted in another GBS claim, "other special masters have never gone beyond a two-month (meaning eight week) interval in holding that a vaccination caused a demyelinating illness." *Barone v. Sec'y of Health & Human Servs.*, No. 11-707V, 2014 WL 6834557, at *13 (Fed. Cl. Spec. Mstr. Nov. 12, 2014) (citing *Aguayo v. Sec'y of Health & Human Servs.*, No. 12–563V, 2013 WL 441013, at *3 (Fed. Cl. Spec. Mstr. Jan. 15, 2013); *Corder v. Sec'y of Health & Human Servs.*, No. 08–228V, 2011 WL 2469736, at *27–*29 (Fed. Cl. Spec. Mstr. May 31, 2011) (proposed four-month onset period from vaccination to GBS too long; two months is longest reasonable timeframe)).

Given the above, the objective medical record establishes that this claim was untenable from the outset. This is not a case in which the development of a fact, out of ambiguous records, *later* revealed that a claim that initially appeared viable in fact was not. Under such circumstances, counsel reasonably bears the risk in filing a claim that lacks reasonable basis, and therefore may be appropriately denied a fees award (even if the matter was otherwise pursued in good faith).

**Conclusion**

The Vaccine Act permits an award of reasonable attorneys' fees and costs to an unsuccessful litigant only where the litigant establishes the Petition was brought in good faith and there was a reasonable basis for the claim for which the Petition was brought. Section 15(e)(1). But Petitioner has failed to provide evidence establishing there was a reasonable basis for filing his claim. **Petitioner's motion for attorney's fees and costs is therefore <u>DENIED</u>.**

The Clerk of the Court is directed to enter judgment in accordance with this Decision.[7]

**IT IS SO ORDERED.**

**<u>s/Brian H. Corcoran</u>**
Brian H. Corcoran
Chief Special Master

---

[7] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.